And we turn to the fourth case of the day, Garcia Rodriguez v. Blanche, appeal number 24-1699. Good morning, Your Honors. May it please the Court. Good morning, Ms. Quadri. I am Saida Quadri on behalf of the petitioner, Juana Garcia Rodriguez. This is up on a petition for review from the denial of an asylum claim from the Board of Immigration Appeals. There are two, for asylum specifically, there are two essential elements that need to be met to meet the definition of a refugee. The first is to either establish past persecution, and if that is established, that would create a rebuttable presumption of a well-founded fear of future persecution. And then second, it should be on account of a protected ground, which is usually religion, nationality, political opinion, membership in a particular social group. In this particular case, the proffered protected ground were two memberships in a particular social group, one being part of the nuclear family of the Garcia Rodriguez family, and the other for being an employee at the San Jose Catholic Church. There are two issues in this particular case. The first issue is that the Board of Immigration Appeals, in affirming the decision of the trial court and denying the asylum claim, reasoned that there was no nexus between the harm the petitioner suffered and between her proffered protected ground of being a church employee and being part of the Garcia Rodriguez family. The BIA incorrectly looked at the fact of the motives of the persecutors. The BIA considered that the motives was financial gain and criminal intent, but the BIA overlooked the concept of mixed motives, and it overlooked the fact that there can be other motives, and as long as one of the protected grounds is a central reason in the case, then there is nexus. And so the BIA overlooked considering evidence within the testimony that the petitioner was part of the Garcia Rodriguez family and that the petitioner was an employee at the San Jose Catholic Church. There was testimony, clear testimony, at the trial level where the petitioner testified that there were three instances of harm that she suffered. There was one in attempted kidnapping when there were persecutors that attempted to kidnap her until she fled, and then there was a second instance that was not too far after the first instance where she received a phone call where there was an actual threat to either her or her daughters being kidnapped if she did not pay a certain amount of money by the end of the day. And then, just a few weeks after that second incident, there was a third incident where the petitioner heard a child's voice asking for help on the other end of the line on a phone call. With regard to the second incident specifically, the petitioner had testified that the persecutors that were calling her specifically identified her. They said they knew who she was, they knew where she worked, they knew when she went to work, they knew when she left work, they knew where her daughters were, they knew where her daughters went to school, and they knew where she lived. This shows a specific targeting to the petitioner. It shows that this wasn't just criminal intent or this wasn't just an attempt to get financial gain, but they knew facts about her. They mentioned the fact that she worked at a church. They mentioned that they knew who she was, and she was Garcia Rodriguez. And so, it shows that there was a particularization in the petitioner's claim for asylum here that was different than just criminal intent or just financial gain, and the board overlooked that and didn't address the mixed motives, and didn't address whether one of the protected grounds was a central reason for the persecution in the case to have met then nexus. Where in the record would one be able to draw the inference that her workplace had something to do or something about her work at the church was one of the things that may have motivated this call, other than the fact that she worked there? Well, the mention of the fact that they worked there is what was highlighted at the trial level with regard to the motive. There wasn't significant questioning thereafter as to any particular reason why the church itself would be targeted, but she did testify that she was serving priests, that she was cooking, she was cleaning, she was doing some form of humanitarian work. May I join this conversation? Because in other words, the fact that the extortioners or the people issuing the threat mentioned her workplace to her on the phone could either show, I agree with you, there can be mixed motives under our law. You're right about that. It could show that something about her workplace is related to why they are choosing her to threaten, or it could show they've done their homework on their criminal plan of extorting people, trying to get money from people they think have money. What did Ms. Garcia Rodriguez do in the record to encourage the immigration judge and then the BIA to draw the conclusion that it was the first and not the second? We agree that she had the testimony. They told her where she works. They know where she works. There's no dispute about that. How did she push her preferred reading of how this is connected to her workplace versus them just doing their homework as really competent criminals? In her testimony, she does talk about working at the church and then how much she makes. She did highlight that her income wasn't any more than the average person's income. There wasn't anything more particular about her that would make her more well-off or wealthier for an extortioner to come after her and then try to take money from her. It wouldn't separate her as a wealthier person than who is now being extorted. The conclusion then would lead to, okay, where does she work, what type of work does she do, and who is her family? With regard to that, we would say that the BIA should have considered the mixed motives and should have addressed that in their decision. Not doing so was legal error, and it should be reversed on that basis. I see I had reserved three minutes for my rebuttal, so I'll just really quickly say that there was also a second issue where the BIA did not address persecution at all in their decision. They relied on a U.S. Supreme Court decision saying that once a dispositive issue is met, all the other legal issues do not need to be met. However, we would say that that was also legal error. Past persecution is an outcome-driven, non-frivolous issue that should have been addressed, especially once nexus is found, then past persecution, once it's established, it creates a rebuttable presumption of future persecution, and it would shift the burden to the Department of Homeland Security at that point, which is a very, very key point and very outcome-driven, and not having addressed that would be legal error. We would say that legal error, there is agreement between the parties, legal questions of law are de novo review, and we would say that overlooking the mixed motive is a legal issue, and that this Court apply de novo review and reverse the decision of the Board of Immigration Appeals. All right, thank you. We'll see you again, Ms. Quadri. Ms. Seymour. May it please the Court, Nell Seymour, on behalf of the Attorney General. Petitioner requests asylum largely based on the attempted kidnapping and the separate extortion attempt from an anonymous caller. But because she failed to establish that a protected ground was or would be a central reason for any harm she suffered or fears, her claim necessarily fails. The INA makes motive critical, and the focus is on persecutory intent. As discussed, Petitioner claimed membership in two particular social groups, one based on her family and the other based on her place of employment. Even assuming those groups were cognizable, however, she did not show that her membership in either group played more than a minor role or any role in motivating her would-be persecutors. And it's well established that neither perceived wealth nor fear of general crime are sufficient bases for relief. And here, substantial evidence supports the agency's reasonable conclusion that she was targeted for a pecuniary gain or a desire to fill their coffers, so to speak. This is supported in the record by Petitioner's own testimony that she was likely targeted because she always worked hard and because she would be able to afford it. In addition, the people who targeted her were anonymous. There is no evidence that the events were related or that they were the same groups or even the same individuals. And more to the point, there is no evidence that they even belonged to any cartel, let alone the same cartel. The government would also like to stress that the substantial evidence standard here is highly deferential. And Petitioner has failed to point to any evidence, direct or circumstantial, sufficient to compel the conclusion that anyone was or would be independently motivated by her kinship or her job. The government would also like to say that the fact that the extortionist knew details about her life does not compel the conclusion that they were therefore motivated to harm her because of her particular social group membership or any other protected ground. And as was discussed, it is more so evidence that they had done their homework. And that she had been picked as someone who might be able to further their criminal objectives does not show on account of a protected ground. It's also important that the context here is discussed, which was a request for money. And the so-called compelling evidence that Petitioner has put forward is really just parts of the threat. If you don't pay us, then we know where you work. If you don't pay us, we know who your children are. At bottom, a person claiming that they are targeted because of a social group or some protected ground must submit evidence supporting that claim and not request or demand, as Petitioner is doing here, that the court draw inferences in their favor. It is not sufficient to make or rest on assumptions that aren't in the record. That is not the same thing as objective evidence that proves a particular motivation. We do note in the record, and the government notes this as well, that the two other women she worked with at the church, we don't have any evidence that they were targeted by these people. But could Ms. Garcia Rodriguez have shown that she was targeted for her membership in one of her identified groups even if the other members of her group were not similarly targeted? On a different record, that may be possible. A lot more would be needed to show that. Here it is almost irrelevant because we know nothing about those two other workers in the group, nor is there any other evidence to suggest that her employment was relevant at all. Addressing the mixed motive argument, first and foremost, Petitioner had failed to exhaust that properly before the agency, and thus it's not properly before this court. Even so, the agency's analysis properly began and ended at the threshold motive inquiry, and it wasn't necessary to do a mixed motive analysis where Petitioner failed to show any motive, any nexus whatsoever to her protected grounds. And concerning the Begmatis bad argument, the agency's reliance on that case was proper. That case is not, as Petitioner contends, limited to discretionary decisions or otherwise couched. The nexus decision is dispositive of both past and future. There is no presumption of a future persecution on account of protected ground if past persecution on account of protected ground was not shown. In conclusion, unless there are any other questions from the court, the record does not compel the conclusion that Petitioner established the requisite nexus between the claimed harm and a protected ground, and thus the court should not disturb the agency's decision and it should deny the petition for review. All right. Well, thank you, Ms. Seymour. Ms. Quadri? Just very briefly, there was mention that there was no indication to show that the events were connected in any way. I would just like to point out in the record that the three events were very close in time to each other. They were just months apart. And then the second phone call did discuss that you or your children will either be kidnapped or put in harm's way. And then the third phone call was of a child asking for help. Putting this into context, the two phone calls must be related. Saying that we will put your children in harm and then having a child on the other end asking for help is insinuating the harm that's about to come. And that can't be ignored from the record to show that these instances are not related at all. And so the fact that three instances are happening so close together shows that there is a level of it being targeted. And further, there is mention that we have to consider the context of the fact that money was being requested here. Money itself being requested does not undermine the threat that's being put forward. To establish persecution, there has to be a threat of death, imprisonment, or some type of significant bodily harm. And there is a threat of bodily harm here. There is a threat that either you or your children will be kidnapped, that you or your children will be harmed. That can't be ignored here. And again, we would say that this is on account of a protected ground of it being family membership and of her employment at the church. And we would say that we would ask this court to reverse the finding of the Board of Immigration Appeals and remand the case. OK. Thank you to both counsel. We will take the case under advisement. And we will